**In re: PAINEWEBBER LIMITED PARTNERSHIPS LITIGATION.**

**Rochelle RITTMASTER, on behalf of herself and all others similarly situated, Plaintiff–Appellee,**

**Elmer Black, Appellant,**

v.

**PAINEWEBBER GROUP, INC.; PaineWebber, Inc., Defendants–Appellees.**

**Docket No. 97–7500.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1997.

Decided June 9, 1998.

Stephen T. Gannon, LeClair Ryan, P.C., Richmond, Virginia, of counsel), for Appellant Elmer Black.

Peter L. Simmons, New York City (Karl Buch, law student, Fried, Frank, Harris, Shriver & Jacobson, New York City, of counsel), for Defendants–Appellees PaineWebber.

Fred T. Isquith, New York City (Daniel W. Krasner, Jody B. Amsel, Wolf Haldenstein Adler Freeman & Herz LLP, New York City (Liaison Counsel); Nicholas E. Chimicles, Chimicles Jacobsen & Tikellis, Haverford, Pennsylvania (Chair, Executive Committee); David J. Bershad, Jerome M. Congress, Janine L. Pollack, Sharon L. Mirsky, George A. Bauer III, Milberg Weiss Bershad Hynes & Lerach LLP, New York City; Edward Labaton, Lawrence A. Sucharow, Joel H. Bernstein, Goodkind Labaton Rudoff & Sucharow, LLP, New York City; Burton H. Finkelstein, Douglas G. Thompson, William Butterfield, Finkelstein, Thompson & Loughran, Washington, D.C.; Edward A. Grossman, Ivan J. Dolowich, Bernstein Litowitz Berger & Grossman, LLP, New York City (Executive Committee), of counsel), for Plaintiff–Appellee Rochelle Rittmaster.

Before: VAN GRAAFEILAND, CARDAMONE, and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

Elmer Black, a plaintiff in a class action suit against defendants PaineWebber *et al.*, appeals from an order of the United States District Court for the Southern District of New York (Stein, J.), entered on October 22, 1996, denying his motion either to opt out of a proposed class settlement or voluntarily dismiss his claim from the class under Fed. R.Civ.P. 41(a)(1). Black asked permission to withdraw from the class long after the deadline for such action had passed and a settlement in principle had been announced publicly. It is usually cause for regret to follow the adage that says "never do today what you can put off until tomorrow." This case is a good example.

## FACTS

The matter before us concerns the allegedly fraudulent sale by defendants Paine-

Charles W. Austin, Jr., Richmond, Virginia (C.W. Austin, Jr., P.C., Richmond, Virginia;

Webber Group, Inc., PaineWebber Inc., and certain of their subsidiaries, affiliates, officers and directors (collectively PaineWebber) of a variety of proprietary direct investment programs (principally limited partnerships) to investors for a 12–year period between 1980 and 1992. Each program held a different portfolio of industrial and asset class investments: some bought real estate, others invested in oil and gas, some engaged in equipment leasing, while yet others provided corporate financing. Although the expectation of risk and return varied by portfolio, the investors allege PaineWebber used uniform sales materials and practices to mislead them as to the exact nature of investing in each particular program. Beginning in November 1994 the investors filed a series of class action suits against PaineWebber in various state and federal courts, accusing the firm of engaging in a nationwide conspiracy to defraud investors. They charged Paine-Webber with RICO violations, violations of federal securities laws, and asserted assorted common law claims.

In March 1995 the representatives of 15 similar classes of investors filed a consolidated, amended class action complaint in the United States District Court for the Southern District of New York on behalf of about 180,000 investors in 70 different programs sponsored and sold by PaineWebber (Class). The group of suits included 11 different cases originally filed in the Southern District of New York, one case filed in the United States District Court for the Southern District of Florida, two cases filed in the state courts of Texas, and one case filed in the state court of New York. The district court for the Southern District of New York consolidated the 15 class actions into one class action (Class Action) for pretrial purposes. It certified the Class pursuant to Fed. R.Civ.P. 23(b)(3) on June 2, 1995, and set July 21, 1995 as the opt-out deadline for members wishing to exclude themselves from the Class and pursue their claims separately.

Plaintiff Elmer Black is a member of the Class. He purchased 15,000 shares of Retail Properties Investors, a PaineWebber partnership, for $150,000 in November 1989. Between March 10, 1995 and September 27,

1995, Black was continuously hospitalized in four different hospitals for gastrointestinal hemorrhage, acute respiratory failure, and aspiration pneumonia.

By early June 1995 a court-approved notice of pendency of class actions (Notice) was mailed to all known Class members, including plaintiff, informing them of the proceedings, their right to opt out of the Class, and the binding effect of remaining a Class member. Specifically, the Notice repeatedly alerted members that they had to complete and return a request for exclusion by July 21, 1995 or they would be bound by the terms of any judgment or settlement. A summary notice of pendency also was published in the national editions of *The New York Times, The Wall Street Journal,* and *USA Today.*

Black, then a 78–year–old man, unmarried and without children, received no mail during his hospitalization. The local post office of his hometown in Rich Creek, Virginia collected his mail and forwarded it to his brother in Lexington, Virginia. As a result, he did not discover the Notice until after his discharge from the hospital. Black also alleges he did not read the summary notices published in any of the newspapers due to his mental and physical condition.

PaineWebber neither filed an answer to the complaint nor moved for summary judgment. Instead, it reached a settlement in principle with the Class on January 18, 1996. The settlement provided that PaineWebber would: (1) make a payment of $125 million into an irrevocable escrow account to fund Class claims; and (2) provide additional benefits consisting of guarantees, fee waivers, and other non-cash benefits to Class members determined to have a value in excess of $75 million. In return, the Class agreed to dismiss its claims against PaineWebber on the merits and with prejudice. The district court approved the settlement in March 1997. *See In re PaineWebber Ltd. Partnerships Litig.,* 171 F.R.D. 104 (S.D.N.Y.1997), *aff'd,* 117 F.3d 721 (2d Cir.1997) (per curiam).

Meanwhile, six months after the settlement was reached, on July 2, 1996, Black sought permission pursuant to Fed.R.Civ.P. 6(b)(2) to opt out of the Class Action after

the applicable deadline had expired. He asserted that because he had been hospitalized during the mailing and opt-out period, he was unaware of the Notice and proceeding. He further maintained that he did not understand the effect of the Notice on his legal rights until he consulted with his attorney "months after." his discharge from the hospital. Alternatively, plaintiff requested the trial court to dismiss his claim from the Class pursuant to Fed.R.Civ.P. 41(a)(1).

In an order entered on October 22, 1996, Judge Stein determined that Black's difficulties did not constitute "excusable neglect" and denied his untimely motion to opt out of the Class Action. Judge Stein additionally ruled that plaintiff was not entitled to dismiss his claim voluntarily pursuant to Fed. R.Civ.P. 41(a)(1). Black appeals. We affirm.

## DISCUSSION

### I   Motion for an Enlargement of Time to Opt Out

#### A.  *Excusable Neglect*

Black failed to return his request to be excluded from the Class by July 21, 1995. In fact, he only sought permission to opt out pursuant to Fed.R.Civ.P. 6(b)(2) on July 2, 1996, almost a year after the deadline had passed. Rule 6(b)(2) permits a court to extend a class member's time for opting out beyond the deadline, and specifically provides

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect.*

Fed.R.Civ.P. 6(b)(2) (emphasis added).

■ Thus, a class member seeking permission to opt out late must first demonstrate "excusable neglect" for his or her failure to comply with a fixed deadline. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 391, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The determination whether a party's conduct constitutes "excusable neglect" is an equitable one that requires a court to consider all relevant circumstances. *See id.* at 395, 113 S.Ct. 1489. For that reason the notion is an "elastic concept." 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1165, at 479 (2d ed.1987); *see also Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489. Excusable neglect may be found where the relevant circumstances reveal inadvertent delays, mistakes, or carelessness. *See id.* at 388, 113 S.Ct. 1489. Hence, it clearly is broad enough to encompass even those omissions caused by circumstances within the movant's control. *See id.* at 392, 113 S.Ct. 1489. To establish excusable neglect, however, a movant must show good faith and a reasonable basis for noncompliance. *See* Wright & Miller, *supra,* § 1165, at 480. A court will also consider the degree of prejudice to the opposing party. *See* 1 James Wm. Moore *et al., Moore's Federal Practice* ¶ 6.06[3][b] (3d ed.1997).

#### B.  *Resolution of Merits*

■ The district court ruled that Black failed to establish "excusable neglect" and consequently denied Black permission to opt out late. We review that decision for an abuse of discretion. *See LoSacco v. City of Middletown,* 71 F.3d 88, 93 (2d Cir.1995); *United States v. Hooper,* 43 F.3d 26, 29 (2d Cir.1994) (per curiam).

Plaintiff avers that the district court abused its discretion when it found his neglect inexcusable because, as he insists, he lacked knowledge of the Class Action, the opt-out deadline, and the effect of the Class Action on his rights until after the deadline had passed. In particular, he focuses his argument on his medical condition between March 10 and September 27, 1995, and contends that because he was hospitalized during this period, he did not read the summary notice published in any of the newspapers and did not actually receive the Notice until two months after the deadline had passed. PaineWebber does not dispute that Black was incapacitated during this period.

■ Although plaintiff's argument is quite compelling for the delay during his hospitalization, it fails to offer a valid explanation,

medical or otherwise, for the intervening delay that occurred between plaintiff's September 27, 1995 discharge from the hospital and his July 2, 1996 filing. A period of nine additional months after his release elapsed before Black filed his motion. Black admits that he began to sort his mail upon his release from the hospital and does not dispute that the Notice was included in the mail he received. Admittedly, seven months of backlogged mail represents considerable volume of messages, but plaintiff, the district court found, should have discovered the Notice well before the specified opt-out deadline.

Although he neither took action to exclude himself from the Class nor made any effort to extend his time to opt out during this nine-month period, plaintiff attempts to account for the intervening delay by stating that he needed to consult with his attorney before he understood the effect of the Notice on his legal rights. We are not persuaded by this argument because the language of the Notice was clear and its meaning plain. The Notice stated repeatedly that those persons remaining as Class members would relinquish their individual claims against PaineWebber. Paragraph 16 further explained in bold and capital print

**IF YOU WANT TO BE EXCLUDED FROM THE CLASS AND NOT BE INCLUDED IN ANY JUDGMENT OR PARTICIPATE IN ANY SETTLEMENT, OR YOU WISH TO PURSUE A CLAIM ON YOUR OWN OUTSIDE THE CLASS ACTION, YOU MUST COMPLETE AND DELIVER, BY HAND OR MAIL, POSTAGE PREPAID AND POSTMARKED ON OR BEFORE JULY 21, 1995, A REQUEST FOR EXCLUSION AS PROVIDED IN PARAGRAPH 18 BELOW.**

This requirement and deadline was reiterated in Paragraph 18. The Notice did not require the services of a lawyer to permit a lay person to comprehend it. Thus, Black's professed need to speak with his attorney is not a reasonable basis for his nine months of inaction. *Cf. Manhattan–Ward, Inc. v. Grinnell Corp.*, 490 F.2d 1183, 1185–86 (2d Cir. 1974) (per curiam) (affirming district court's finding that "excusable neglect" had not been demonstrated where, although movant neither received mailed notice of the class action nor saw notice published in national newspapers, liaison counsel for individual plaintiffs put him on notice that a settlement was being proposed and thereby imposed a duty on him to keep up with developments).

In sum, we think the district court reached the right conclusion when it declined to grant plaintiff an enlargement of the deadline date to opt out of the Class. Consequently, we cannot say it was an abuse of discretion to deny plaintiff's motion to · exclude himself from the Class nearly a year after the deadline to do so had expired.

## II  Plaintiff's Motion Under Rule 41(a)(1) for Voluntary Dismissal

### A.  Defendants' Failure to File Answer

Black attempts to use Fed.R.Civ.P. 41(a)(1) as a means to circumvent Rule 6(b)(2)'s "excusable neglect" requirement and opt out of the Class late without leave of the court. Rule 41(a)(1), which governs voluntary dismissals of actions, permits dismissal as a matter of right prior to the service of an answer or a motion for summary judgment. It states, in relevant part

> Subject to the provisions of Rule 23(e) ... an action may be dismissed by the plaintiff without order of court ... by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.

*Id.*

▮ Plaintiff at the outset must meet defendants' formalistic argument that Rule 41(a)(1), by its terms, permits only the plaintiffs named in the complaint to dismiss the action, and that because the Class complaint did not name Black as a plaintiff, he cannot now rely on Rule 41(a)(1) to dismiss his action. We think that when a person fits the description of a potential member of a class on whose behalf an action has been commenced and the court subsequently certifies the class, the person becomes a plaintiff in the eyes of the law. Thus, Black is entitled to invoke Rule 41(a)(1).

■ Having successfully overcome that obstacle, plaintiff declares that Rule 41(a)(1) allows him to dismiss his claim from the Class settlement without leave of the court because PaineWebber failed either to file an answer or move for summary judgment prior to his Rule 41(a) motion to dismiss. This argument is unavailing, for the language of Rule 41(a)(1) expressly states its provisions are "subject to" the provisions of Fed. R.Civ.P. 23(e). Rule 23(e), in turn, provides that a class action may not be "dismissed or compromised without the approval of the court...." *See* Fed.R.Civ.P. 23(e). The "subject to" clause of Rule 41(a)(1) thus incorporates Rule 23(e)'s requirement of court approval into its stated provisions. *See Larkin Gen. Hosp., Ltd. v. American Tel. & Tel. Co.*, 93 F.R.D. 497, 499–500 (E.D.Pa.1982).

As a result, a class action plaintiff cannot voluntarily dismiss his own action simply by filing a Rule 41(a)(1) notice of dismissal. *See* 5 Moore, *supra,* ¶ 23.81[3]. Instead, a class action plaintiff, such as Black, must obtain court approval before he may dismiss his claim from that of the class. *See id.* The fact that PaineWebber never filed an answer or moved for summary judgment is therefore irrelevant.

### B. *Effect of Rule 23(e) on Rule 41(a)(1) Motions*

Having determined that Rule 41(a)(1) incorporates Rule 23(e)'s court approval requirement, we turn to Black's retort that Rule 23(e)'s requirement nevertheless does not attach to his particular effort to dismiss his claim. He believes that Rule 23(e) only requires court approval for a dismissal or compromise of the class action itself. Thus, it is his assertion that Rule 23(e) does not mandate approval of dismissals or compromises of individual claims within the class.

To support this distinction between the dismissal of a class action and the dismissal of individual claims within the class, plaintiff analogizes his requested Rule 41(a)(1) dismissal to a settlement (i.e., compromise) of an individual claim. He cites to cases involving compromises of individual claims that purportedly would permit him to dismiss his claim under Rule 41(a)(1) without court ap-

proval. Concededly, these cases allowed *potential* class plaintiffs to settle their claims without court approval. For example, in *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l, Inc.,* 455 F.2d 770 (2d Cir.1972), the plaintiff, as the potential class representative, appealed from an interlocutory order permitting the defendant to negotiate non-approved settlements individually with potential class members. *Id.* at 771–72. We stated, in dicta, that the defendant did not violate the broad command of Rule 23(e) by pursuing these settlements

> [E]ven if defendant should succeed in settling with so many [potential class members] that the court will be forced to deny class action status, plaintiff's complaint will remain untouched. As we have, in essence, already noted, plaintiff has no legally protected right to sue on behalf of other franchisees who prefer to settle; [Fed. R.Civ.P. 23(e) ], requiring court approval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect on the rights of others.

*Id.* at 775. Hence, we concluded that Rule 23(e) did not require court approval of compromises of the individual claims of potential class members. *See id.*; *see also Christensen v. Kiewit–Murdock Inv. Corp.,* 815 F.2d 206, 213 (2d Cir.1987) (defendant's tender offer to potential members of plaintiff class did not violate Rule 23(e)); *Nesenoff v. Muten,* 67 F.R.D. 500, 502–03 (E.D.N.Y.1974) (same). Similarly, Black now insists that Rule 23(e) does not restrict his right to dismiss his individual claim under Rule 41(a)(1).

We are unable to accept Black's view of the effect of Rule 23(e) on his motion for a voluntary dismissal because we cannot overlook a critical factual distinction between the present case and those he cites. The district court certified the Class on June 2, 1995. Black therefore is a certified—not a potential—class member. This distinguishes him from the dismissing plaintiffs in the cases on which he relies. *See, e.g., Christensen,* 815 F.2d at 213 (recognizing that *Weight Watchers* involved only a "potential" class "prior to class certification" and suggesting that a potential member's right to compromise his or

her own claim may be contingent upon this fact); *Weight Watchers*, 455 F.2d at 771, 773 (referring to parties who sought separate treatment as "potential members of the class"); *Nesenoff*, 67 F.R.D. at 501–03 (considering whether to certify the class). The distinction between a certified class member and a potential class member leads us to reject plaintiff's reliance on our prior settlement cases as support for his requested Rule 41(a)(1) dismissal.

Absent certification by a court and identification of the class, the action is not properly a class action within the meaning of Rule 23(c)(1) and (c)(3). *See Baxter v. Palmigiano*, 425 U.S. 308, 310–11 n. 1, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (district court improperly treated suit as a class action because it failed to certify the suit as a class action); *cf. Board of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (per curiam) (refusing to treat an action as a class action because the putative class had not been certified). Without a proper Rule 23 class action before it, a district court lacks authority to enter orders establishing opt-out procedures and deadlines for prospective class members. Instead, potential class members may leave the putative class at will. We therefore permitted potential members of a class not yet certified to settle their individual claims with the potential class defendant. *See Christensen*, 815 F.2d at 213; *Weight Watchers*, 455 F.2d at 775; *Nesenoff*, 67 F.R.D. at 502–03. However, once a district court enters an order certifying the class, Rule 23(d)(5) authorizes it to make appropriate procedural orders to facilitate the fair and efficient conduct of the action. Fed.R.Civ.P. 23(d)(5); *see also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304 (2d Cir.1990) (rejecting a narrow interpretation of a court's authority to enter procedural orders pursuant to Rule 23(d)(5)).

It was pursuant to his power under Rule 23(d)(5) that Judge Stein ordered the Class members to exercise their right to opt out by July 21, 1995. That order then changed the Class members' position with respect to the Class Action and gave them a choice whether to remain in the Class or proceed on their own. Either way, they were required to accept the consequences of their actions (or inaction).

## C. *Policy Rationale for Holding*

Black's suggested interpretation of the applicability of Rule 23(e) would render opt-out procedures meaningless because a class member could exit the class at any time, even after the opt-out deadline expired, simply by filing a Rule 41(a)(1) motion for a voluntary dismissal of his action. We decline to sanction such a result. On the contrary, we think that orders establishing opt-out procedures and deadlines should be given full effect in order to foster the strong judicial policy in favor of settlements, particularly in the class action context. *See, e.g., In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir.1995) (reasoning that the law favors settlement, particularly in class actions); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995) (stating the strong judicial policy in favor of settlements).

Class defendants, like PaineWebber, would be much less inclined to settle suits brought against them if class members were free to leave the class at will in order to pursue their individual claims against defendants in separate proceedings. *See In re Baldwin–United Corp.*, 770 F.2d 328, 337 (2d Cir.1985) ("The success of any [class action] settlement was dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts."). Opt-out deadlines ensure that parties to a class action can rely on the membership of a class becoming fixed by a specified date and that such members will be bound by the resulting outcome of the legal proceedings. In this manner, these procedures conclusively define, with reasonable certainty, two requisite factors for settlement: the scope of the class and the amount of the claims.

■ Despite our ruling once a class is certified class members no longer have a unilateral right to exit the class after the opt-out deadline has passed, such individuals still may avail themselves of a reasonable degree of flexibility with respect to their positions.

As discussed above, a district judge may permit a class member to opt out after the deadline has passed upon a showing of "excusable neglect" pursuant to Fed.R.Civ.P. 6(b)(2).

Consequently, reading Rules 41(a)(1) and 23(e) together demonstrates that although an ordinary cause of action requires only notice to the court by way of a motion to effect a voluntary dismissal of that action, an individual claim that is part of a certified class action cannot be dismissed without court approval.

## CONCLUSION

Accordingly, for the reasons stated the order appealed from is affirmed.